LIVAUDAIS          We do not perceive any error in the decree of the court,
vs.
PERRET AT AL.  and think it ought not to be disturbed.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.

LIVAUDAIS *vs.* PERRET ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In all contracts, each party is bound, *timely*, to communicate to the other,
whatever it is his interest and right to know, and what is within the
knowledge and power of either.

He who receives a letter containing a mandate is presumed to accept it in
the terms proposed therein, unless *immediately* on the receipt of it a con-
trary determination is made known.

The plaintiff, on leaving for France, appointed the defendants her manda-
tories, allowing them a commission of two and a half per cent. on *the sales*
of her property. Shortly after her departure they informed her of an
opportunity to sell her plantation, and to send them a special power.
She complied, and wrote that she would allow only one and a half per
cent. for selling, and the letter was received the *1st November, 1831*. It
was not acknowledged until the 15th February following, when an
account of sales of the property was sent, claiming two and half per
cent. commission : *Held*, that their silence for so long a time raised *the
presumption that the terms last proposed were accepted, and only one
and a half per cent was allowed.*

The verdict of the jury is entitled to the regard of the court on questions
of fact only. On questions of law, whatever respect is due to the
opinion of the jury, the court is bound to pronounce its own.

This is an action to recover a balance in the hands of Perret & Charbonnet, which they retain as commissions on the sale of property of the plaintiff.

This case was once before in this court and remanded.

On its return to the District Court, the contest was chiefly about the amount of commissions to be allowed the defendants.

The facts of the case show that in April, 1830, Madame Livaudais left New-Orleans for France. On setting out, she gave a power of attorney to the defendants, to administer and sell her property. In her letter of instructions accompanying the power, she allows the following commissions, viz :

" On all disbursements, such as plantation expenses, remittances of funds to France, payments in bank, even when they had funds of her own, a commission of one and a half per cent."

" On *all sales* of her property two and a half per cent."

" On sales of crops two and a half per cent."

During her absence in France, she was advised of offers to purchase her plantation. The mandatories not considering their powers sufficient to sell it, applied for a special power.

The plaintiff wrote from France in July, and the letter containing a special power and new instructions were received by the defendants early in November, 1831. This letter was not answered until the 15th February following.

In this letter she thinks the commission for selling her property, as the amount is likely to be considerable, should be reduced from two and a half to one and a half per cent. ; and she joins her son-in-law, Mr. C. Papet, in the mandate with the defendants.

About the latter end of January, 1832, and before giving an answer to the new mandate and instructions, the defendants made a sale of her plantation for four hundred and fifty thousand dollars. On the 15th February following, they replied to the plaintiff's letter received by them in November, and claimed a commission of two and a half per cent. on the

EASTERN DIST. amount of this sale, according to the first arrangement, when
June, 1837. the plaintiff was leaving for France.

LIVAUDAIS
vs.
FERRET ET AL.

The defendants retained funds in their hands sufficient to cover their charge of two and a half per cent., for which this suit was commenced. Papet being included in the suit, he reconvened and claimed three fourths per cent. on the amount of sales under the new mandate, being joined or associated with the defendants in the mandate.

The cause was submitted to a jury, who allowed all these charges. From judgment rendered thereon, the plaintiff appealed.

*Hennen,* for the plaintiff, contended, that the defendants must be governed by the terms of the new mandate, contained in the plaintiff's letter of July, and received by them in November, 1831. This mandate reduces the commission to one and a half per cent. on the sales of the plantation.

2. The letter of July, and the power of attorney accompanying it, was the only authority upon which the defendants could act. It was a special authority to sell the plantation. The delay in answering this letter until the sale was completed, should be taken as an acceptance of the mandate, on the terms prescribed therein. They accepted the mandate to sell, and are bound by the terms it prescribes as to the commissions.

3. There is no principle in law better settled than that he who receives letters containing a mandate, is presumed to accept according to the terms contained in it, unless immediately on the receipt of it, a contrary determination is expressed in answer. This principle is found in the civil law, in the commentators, and in writers on the French law, and in the decisions of this court. It is peculiarly applicable to this case. *Digest,* lib. 14, tit. 6, l. 16 *de Sen. Consult. Maced., Godefroy in note* 19 *thereon. See Gregorio Lopez's note on Partida* 5, tit. 1, l. 6. *Merlin's Questions de Droit,* tom. 2, p. 455, verbo *Compte Courant,* section 1. *Paillet on Code Napoleon,* art. 1985. 7 *Martin, N. S.* 143. *Louisiana Code,* 2958.

The defendants understood the letter accompanying the new mandate perfectly ; for in their reply, more than three months afterwards, and after making sale of the property, saying they will not act under it, but will claim, and do retain, two and a half per cent. commission, according to the first arrangement. They also pay over to Papet his three fourths per cent. in addition, which is not pretended to be claimed under any other authority but the new 'mandate. Their long silence binds them in the acceptance of the new mandate in all its terms.

EASTERN DIST.
June, 1837.

LIVAUDAIS
vs.
PERRET ET AL.

5. If defendants intended to decline the new mandate, they should have notified the plaintiff immediately, that she might have selected another mandatory ; not doing this, and thereby inducing the belief that they were satisfied, they are bound by her offer.

6. The commissions allowed the defendants and Papet together, should not exceed two and a half per cent., but in justice should be reduced to one and a half per cent., to be divided between them.

*Mazureau*, for the defendants, insisted that the French expressions in the plaintiff's letter, accompanying the special power to sell, to wit : " Je pense que la commission de deux et demi pour cent., etc., doit être reduit à une et demi pour cent.," fixes nothing. They do not signify a determination *not* to allow more than one and a half per cent. They amount to nothing more than a proposition to reduce the commission to that rate.

2. It is not correct to say that the defendants failed to answer this letter until the sale was completed. The answer is dated the 15th February, and the deed of sale was not passed until nine days thereafter. Until the deed is signed there is no sale.

3. The defendants simply asked for a power to sell the plaintiff's plantation, and she gave it. She was determined to sell, and her mandatories had been appointed, and the terms of their trust arranged, before she left Louisiana. In sending this special mandate, she simply makes a proposition ;

38

suggests a mere thought as to commissions, which was very properly a matter for further negociation without retarding or interfering with the sale.

4. The learning and array of authorities cited from the Roman civil law and its commentators, from Merlin and the Louisiana Code, shows much learning, and is very good law, but does not apply to this case ; for no acceptance can be inferred of the mandate, with commissions reduced from the short time which elapsed between the receipt of the latter and the answer rejecting this proposition.

5. The Louisiana Code, article 2958, furnishes the only authority by which we are to be governed in this case.    It shows how mandates are accepted ; and article 2959 says, " if the mandatory pleads that he has not accepted or acted, etc., it is incumbent on the principal to prove that he has." Surely it will not be deemed an acceptance because the mandate has been received.    It is absolutely necessary to show that the mandate has not only been received, but *accepted*, in order to bind the mandatory.    This has not been proved, and cannot be.

6. The code says, " a procuration is gratuitous unless there have been a contrary agreement."    The procuration is one thing, and the agreement as to compensation and commissions another.    The defendants only asked for a special power in this case to sell the property ; the commission had been agreed on.    The letter proposing to alter the rate of compensation or commission, was not an agreement itself as soon as received ; it required the assent of the other party ; but the power to sell was complete.

7. The defendants stated the matter fully in their answer of the 15th February, before the sale was completed.    Instead of understanding *definitely* that the commission was fixed at one and a half per cent., they say expressly " that they are negociating the sale ; that one difficulty stops them which will be settled the next day ; *but that they cannot consent to alter their former agreement, as to the amount of their commissions*."    It is evident from the whole tenor of the letter to

them and their answer, that the defendants never accepted the proposition to reduce the commission, and gave the plaintiff timely advice of this intention.

*Martin, J.,* delivered the opinion of the court.

This case was remanded from this court for a new trial, at June term, 1834. 6 *Louisiana Reports,* 695. The defendants obtained a second verdict, and the plaintiff is appellant from the judgment thereon.

The facts of the case are these: The plaintiff, owner of a valuable plantation and slaves, near the city of New-Orleans, and of several lots in one of its faubourgs, being about to embark for France, in the spring of 1830, agreed with the firm of Perret & Charbonnet to allow them, for their administration of the plantation, and the sale of these lots, on their disbursements, one and a half per cent., and on the sales two and half per cent.

Some time after her departure, an opportunity presenting itself for the sale of the plantation, they informed her of it, and requested her, if she felt disposed to improve it, to send a special power to effect the sale.

She executed such a power to them, and to Papet, her son-in-law. In the letter which covered this document, she used the following expression: "I think that the commission of two and a half per cent., stipulated in our engagements for the administration of my property, ought to be reduced to one and a half, in the case of a sale, the price of which may arise to a very considerable sum, and this is a plain matter, and much less complicated than the administration of an estate." This letter was received by the firm in the beginning of November, 1831. The receipt of it or of the document it contained, does not appear to have been acknowledged until the 15th February, 1832, when, having effected the sale of the plantation, for a sum of upwards of four hundred and fifty thousand dollars, they informed the plaintiff of it, and made the following observation in regard to the commissions they intended to charge: "We cannot depart, with regard to our commissions, from the arrange-

ment we made with you at your departure, according to which we are entitled to a commission of two and a half per cent. on all sales. That rate is exactly one half of that at which a charge is made on all orders of sale of property coming from abroad. You have thought it convenient to join Mr. Papet to us. That which relates to him is no concern of ours, and you will have to settle directly with him, as to the compensation you may see fit to allow."

On these facts, the jury have allowed the firm of Perret & Charbonnet to retain a commission of two and a half per cent., and to Papet, one of three fourths per cent., besides a commission to the latter on the disposal of the proceeds of the sale. The plaintiff complains of this verdict, and the judgment consequent thereon, as allowing an excessive commission to the firm, and to Papet, a commission on the disposition of the proceeds of the sale, which were not committed to his management.

The plaintiff has built her hopes of success, in reducing the commission allowed to the firm, on the following grounds : 1st, The sale of the plantation was absolutely unconnected with the arrangements she made with them at her departure, for the administration of her estate and the sale of her lots in the faubourg. 2d, The silence of the firm during a period of upwards of three months, which intervened between their receipt of the plaintiff's letter, enclosing the power of attorney, and their reply thereto, must be considered as an acceptance of the mandate on the terms on which it was offered.

I. We concur with the plaintiff's counsel on the first proposition. The firm appear themselves to have considered the sale of the plantation as entirely out of the arrangements the plaintiff made with them at her departure. Otherwise, there would have been no necessity for a new power.

II. The nature and importance of the subject of the mandate, were such as to require, in the ordinary course of business, an immediate acknowledgment of the receipt of the power of attorney, and the letter of instructions in which it was enclosed.

In that letter the plaintiff informed the firm that she <span style="float:right">Eastern Dist.</span>
-considered a commission of one and a half per cent. as a <span style="float:right">June, 1837.</span>
sufficient compensation for the execution of the mandate. <span style="float:right">Livaudais</span>
This was an appeal to them for the expression of their assent <span style="float:right">vs.<br>Perret et al.</span>
·or dissent. If they considered her as in an error, it was
·their duty immediately to undeceive her, and to afford her
the opportunity, if she saw fit, to seek another mandatory.
The plaintiff's counsel has presented to us this uncommon
and long delay of the firm, in making an acknowledgment
·which must have been accompanied with their assent to, or
dissent from the terms on which the mandate was offered,
as an evidence of their intention to secure, at all events, the
sale of the property, and at least the commission proposed,
without losing the opportunity of insisting on a higher.
The counsel of the firm has not enabled us to attribute
the conduct of ·his clients to a more commendable motive,
and we are unable to discover any. Every one must be
supposed to have desired what is the necessary consequence
of his conduct. In all contracts each party is bound timely
to communicate to the other whatever it is his interest and
right to know, and is within the knowledge of the former.
In the present case the plaintiff had a right to know whether
the firm were willing to execute the mandate on the terms
proposed. The firm were bound to give that information
immediately, and could not fairly withhold it until the exe-
cution of the mandate rendered the information useless.
The plaintiff's counsel has correctly urged, that he who
receives a letter containing a mandate, is presumed to accept
it, as stated in the letter, unless immediately after the receipt
a contrary determination is made known. This principle is
found in the *Digest, lib.* 14, *tit.* 6, *l.* 16 *De Sen. Consult.*
*Maced. Si filius familias absente patre, quasi ex mandato ejus*
*pecuniam acceperit, cavisset et ad patrem literas emisit, ut eam*
*pecuniam in provincia solveret, debet pater, si actum filii sui*
*improbat, continuo testimonium interponere contrariæ voluntatis ;*
and is correctly and tersely stated by Godefroy in his note
(19) thereon. *Literas qui recipits conjunctionis, favore, præsu-*
*mitur probare ea omnia quæ in literis comprehensa, nisi continuo*

*In all contracts each party is bound, timely, to communicate to the other whatever it is his interest and right to know, and what is within the knowledge and power of either.*

*He who receives a letter containing a mandate, is presumed to accept it in the terms proposed therein, unless immediately on the receipt of it, a contrary determination is made known.*

EASTERN DIST.
June, 1837.

LIVAUDAIS
vs.
PERRET ET AL.

The plaintiff, on leaving for France, appointed the defendants her mandatories, allowing them a commission of two and a half per cent. on *the sales* of her property. Shortly after her departure, they informed her of an opportunity to sell her plantation, and to send them a special power. She complied, and wrote that she would allow only one and a half per cent. for selling, and the letter was received the 1st November, 1831. It was not acknowledged until the 15th February following, when an account of sales of the property was sent, claiming two and a half per cent. commission: *Held,* that their silence for so long a time raised the presumption that the terms last proposed were accepted, and only one and a half per cent. was allowed.

*seu illico contradicat,* which is approved as law by Gregorio Lopez in his note (2) on *part. 5, tit.* 1, *l.* 6. *Procurator qui recepit literas mandati et statim non contradixit, tendur acceptare, seu videtur acceptare mandatum.* Merlin in his *Questions de Droit,* tom. 2, *p.* 455, (4*th edition in quarto*) *verbo, Compte Courant, section* 1, sustains the same principles, as does Paillet, on the 1985th article of the Code Napoleon, and they have been recognized by this court. 7 *Martin, N. S.,* 143, *Flower et al.* vs. *Jones et al.* Our code also contains a textual provision based on these laws. *Louisiana Code, article* 2958. These authorities were submitted to us, and are the basis of our judgment in the case of *Pitts* vs. *Schubert, (ante)* very lately decided in this court.

The plaintiff had an undoubted right to join Papet to the firm, and their execution of a power in which he was named with them, precludes any objection on that ground. Strictly speaking, but one commission was due, and it was to be divided between the mandatories. Whether Papet and the firm constituted two or more co-mandatories, is a point which we have thought it unnesessary to examine, because the letter, in which the plaintiff speaks of a commission of one and a half per cent., is addressed to the firm alone, and not to them and Papet. We have, therefore, concluded that the plaintiff's intention was, that the firm should have the proposed commission.

It appears to us the jury erred in allowing a commission of two and a half instead of one and a half per cent. The difference, to wit: four thousand nine hundred dollars, the plaintiff is entitled to recover, with interest, according to agreement on record, at the rate of ten per cent. per annum, from the day it was received, to wit: the 4th of April, 1832, as well as the sum of two hundred and fifty-two dollars and forty-one cents, which appears to be due by the firm's own account, with interest, at the same rate, from the time it was acknowledged to be due, to wit: the 5th January, 1833. Papet has charged, and the jury have allowed, a commission of three fourths per cent. on the sale of the plantation, which is one half of the one and a half per cent. mentioned in the

plaintiff's letter to the firm. This is not disputed. He has further charged, and been allowed a commission on the posterior disposition of the proceeds of the sale, in which he does not appear to us to have been authorized to intermeddle.

It is always with reluctance that we interfere with the verdict of a jury, but it is entitled to our regard in questions of fact only. In matters of law, whatever respect we may have for their opinion, we are bound to pronounce our own. In the present case there is not the least doubt in contest about the facts. The only question that arises, is as to the law which results from them. On this we think the jury erred, and it is our duty to relieve the plaintiff from the consequence of their error.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and that the plaintiff recover from the firm of Perret & Charbonnet the sum of four thousand and nine hundred dollars, with interest, at the rate of ten per cent. per annum, from the 4th April, 1832, until paid, and the sum of two hundred and fifty-two dollars and forty-one cents, with interest, at the rate of ten per cent. per annum, from the 5th January, 1833, until paid, and that she further recover from F. Livaudais, who has intervened in this court, as curator of the estate of Papet, now deceased, in his said capacity, and in the due course of administration of said estate, the sum of two thousand one hundred and twenty-eight dollars and seventeen cents, the defendants and appellees paying costs in both courts.

*Eastern Dist.*
*June, 1837.*

LIVAUDAIS
*vs.*
PERRET ET AL.

The verdict of the jury is entitled to the regard of the court on questions of fact only. On questions of law, whatever respect is due to the opinion of the jury, the court is bound to pronounce its own.